No. 31,379

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Appellant*, v. F. A. LEWIS and THE AMERICAN SURETY COMPANY OF NEW YORK, *Appellees*.

(27 P. 2d 250.)

Opinion filed December 9, 1933.

*Roland Boynton*, attorney-general, *C. A. Spencer* and *J. H. Jenson*, both of Oakley, for the appellant.

*R. H. Thompson*, of Gove, for the appellee F. A. Lewis; *R. D. Armstrong*, of Scott City, for appellee American Surety Company of New York.

The opinion of the court was delivered by

BURCH, J.: The action was one by the state on the relation of the attorney-general against a former county treasurer of Gove county and the surety on his bond to recover money paid by the county treasurer to the treasurer of a school district, constituting a portion of the sinking fund for the payment of term bonds issued by the school district. Plaintiff moved for judgment on the pleadings. The motion was denied, and plaintiff appeals.

Defendants contend the answer raised questions of fact, and consequently judgment for plaintiff on the pleadings was not permissible. The pleadings clearly presented an ultimate question of law, determination of which is decisive of the controversy. The question, in its simplest form, is: Who is custodian of the sinking fund for payment of school-district term bonds, the county treasurer or the school-district treasurer?

In 1868 school districts levied their own taxes, and the treasurer was custodian of the money when collected. On March 14, 1877, the following statute took effect:

"SECTION 1. That all school-district treasurers in the state of Kansas, and all other persons, shall, on or before the first day of May, A. D. eighteen hundred and seventy-seven, be required to pay over to the county treasurers of their respective counties, all moneys in their hands belonging to the sinking funds of their respective districts.

"SEC. 2. That after the said first day of May, A. D. eighteen hundred and seventy-seven, the county treasurers of the several counties of the state of Kansas shall retain in their possession all moneys due or belonging to the sinking funds of the several school districts of their counties, giving to the school-district treasurers a voucher or certificate therefor, which said certificate shall show the amount held by said county treasurer as sinking fund for the school district to which it belongs; and the amount of said certificate shall be by the said district treasurers taken up and placed upon their annual reports and accounted for the same as other cash disbursed or expended." (Laws 1877, ch. 173.)

Section 1 applied to money in the hands of school-district treasurers at the time the act took effect. Section 2 looked to the future, and after May 1, 1877, sinking-fund money was to be held in the county treasury and not paid over to school-district treasurers. School districts, however, were still permitted to levy their own sinking-fund taxes. When the statutes were revised in 1923, section 2 became R. S. 72-1034.

In 1879 the following statute took effect:

"It shall be the duty of the board of county commissioners of each county to levy, annually, upon all the taxable property in each district in such county a tax sufficient to pay the interest accruing upon any bond issued by such district, and to provide a sinking fund for the final redemption of the bonds, such levy to be made with the annual levy of the county, and the taxes collected with other taxes, and when collected shall be and remain in the hands of the county treasurer, a specific fund for the payment of the interest upon such bonds, and for their final payment at maturity: *Provided,* That moneys in the hands of the county treasurer belonging to the sinking funds of the several school districts in such county shall be invested by the county treasurer—first, in the bonds of the district to which said sinking fund belongs, provided such bonds can be purchased at a price not exceeding their market or par value; second, in the bonds of other school districts of this state maturing before the bonds for which such fund is raised, provided the same can be purchased at a price not exceeding their market or par value; third, in the bonds of the state of Kansas, or of the United States." (Laws 1879, ch. 49, § 5.)

In 1923 this section was revised by eliminating the proviso and changing the phraseology of the remaining portion. As revised the section became R. S. 72-2004, which reads:

"It shall be the duty of the board of county commissioners of each county

to levy annually upon all the taxable property in each district in such county a tax sufficient to pay the interest and the bonds issued by such district as they mature, such levy to be made with the annual levy of the county, and the taxes collected with other taxes, and when collected shall be and remain in the hands of the county treasurer, a specific fund for the payment of the interest upon such bonds and for their payment as they mature."

In 1923 the law relating to bonds issued by municipalities was revised generally. The term "municipality" was defined to include school districts, and the following sections were enacted:

"Whenever any municipality has issued bonds the entire amount of which become due and payable at the same time, it shall be the duty of the proper officers of such municipality to levy in each year a sinking fund sufficient to pay the said bonds when due, in addition to the tax necessary to pay the interest thereon." (R. S. 10-118.)

"The officers of any municipality which has levied and collected a sinking fund for the payment of bonds not then due may invest the said sinking fund in any municipal bonds of this state which shall become due prior to the due date of the bonds for which such sinking fund was levied and collected: *Provided,* No sinking fund shall be invested under this act in the bonds of any county, township, city or school district where the bonded indebtedness thereof shall exceed ten per cent of its total assessed valuation as shown by the last assessment preceding such investment." (R. S. 10-122.)

In 1923 two sections of the school-district law of 1876 were continued in force, and became R. S. 72-1017 and 72-1018, which read:

"The treasurer of each district shall pay out, on the order of the clerk, signed by the director of the district, all public moneys which shall come into his hands for the use of the district.

"The county treasurer shall pay to each district treasurer in the county all school moneys in the county treasury belonging to the district, upon the order of the director and clerk of the district: *Provided,* That said order shall be accompanied by a certificate from the district clerk stating that the treasurer of the district has executed and filed his bond as required by law."

Of course neither the revisors of the statutes nor the legislature which promulgated the revision of 1923 intended there should be inconsistent provisions relating to the same subject in the body of the revised statutes. The rule of interpretation usually applied to statutes enacted at the same time is that specific provisions prevail over merely general provisions, and in order that there might be no doubt about it, the general revision of the municipal-bond law concluded with the following section:

"This act shall govern the issuance of all municipal bonds, except where different provisions are specifically provided by law, in which case the specific

provisions shall control only so far as they conflict with this act." (R. S. 10-125.)

The result is that specific provisions relating to school-district sinking funds control.

Under R. S. 72-2004 the county commissioners make the levy to pay interest and to pay bonds as they mature, and the county treasurer keeps the money when collected. Under R. S. 72-1034 the county treasurer keeps all school-district sinking-fund money, and gives the district treasurer certificates for accounting purposes.

By the elimination of the proviso in section 5, chapter 49, Laws of 1879, authorizing the county treasurer to invest school-district sinking-fund money, and by the grant of general authority to officers of municipalities, including school districts, to invest sinking-fund money (R. S. 10-122), school-district officers may invest sinking-fund money in bonds of the kinds designated by statute. The school-district officers, however, invest money not in possession of the district treasurer, but in possession of the county treasurer. He is custodian of the funds, and he remains custodian of the funds until they are in fact used to pay for bonds for the purchase of which the school district has previously negotiated.

R. S. 72-1017 and 72-1018 refer to payment by the county treasurer to the school-district treasurer and disbursement by the school-district treasurer of funds properly belonging to the district for use in ordinary course of conduct of school-district affairs. They do not relate to specific funds held in the county treasury for payment of term bonds when they mature. Construed as indicated, there is no conflict between the various provisions of the Revised Statutes of 1923.

The petition disclosed payment by the county treasurer to the school-district treasurer of $14,489.08 out of the sinking fund created for payment of school-district term bonds. Under R. S. 10-122, the school-district treasurer could not invest sinking-fund money. Investment required official action by the school-district officers. The answer disclosed no resolution of the school-district board to invest sinking-fund money, and no negotiations completed or in contemplation for purchase of bonds with sinking-fund money. The answer merely disclosed payment by the county treasurer to the school-district treasurer of sinking-fund money on ordinary orders, as if the district needed money to buy coal, pay teachers,

and the like. The answer also disclosed that the school-district treasurer embezzled the money, and then died.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff on the pleadings.

HUTCHISON, J., not sitting.